# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DONNELL HURT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-1167 (RBW) |
| | ) |
| DISTRICT OF COLUMBIA COURT | ) |
| SERVICES AND OFFENDER | ) |
| SUPERVISION AGENCY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This civil action brought *pro se* is on partial remand from the United States Court of

Appeals for the District of Columbia Circuit for further proceedings to address the plaintiff's

claim brought under the improper disclosure provision of the Privacy Act, 5 U.S.C. § 552a

(2000).  *See Hurt v. Cromer*, No. 09-5224, Order (D.C. Cir. June 11, 2010).[1]  At the time giving

rise to this action, the plaintiff was a parolee under the supervision of the Court Services and

Offender Supervision Agency for the District of Columbia  ("CSOSA").  *See Hurt v. District of*

*Columbia Court Services*, 612 F. Supp. 2d 54, 56 (D.D.C. 2009).  The remanded claim against

CSOSA[2] is based on the alleged disclosure by the plaintiff's parole officer, Keith Cromer

("Cromer"), to the plaintiff's then-girlfriend that he had served a prison sentence for murder.  *See*

*id*. at 55.

---

[1]  On appeal from the final order issued in this action, the government conceded that under District of Columbia Circuit precedent, an agency cannot exempt itself from the Privacy Act's civil liability provisions set forth at 5 U.S.C. § 552a(g) and that this Court's dismissal on that basis therefore was error.  *See* Order (citing *Tijerina v. Walters*, 821 F.2d 789, 796-97 (D.C. Cir. 1987)).

[2]  See *Hurt v. District of Columbia Court Services*, 612 F. Supp. 2d 54, 57 (D.D.C. 2009) (substituting CSOSA as the real party in interest to the Privacy Act claim).

The defendant now moves for summary judgment under Fed. R. Civ. P. 56., which the plaintiff opposes.  Upon consideration of the parties' submissions and the relevant parts of the record, the Court will grant the defendant's motion and enter judgment for the defendant accordingly.

## I. BACKGROUND

The relevant facts are as follows.  The plaintiff was convicted in the Superior Court of the District of Columbia for murder in the second degree while armed, grand larceny and petit larceny, and was sentenced on May 19, 1983, to 15 to 45 years' imprisonment.  *Hurt*, 612 F. Supp. 2d at 56.  He was released to parole supervision on December 30, 2005, with a full-term parole expiration date of July 1, 2039.  *Id.*

In a parole supervision report dated July 24, 2006, the  plaintiff stated that he resided with his girlfriend ("L.H.") in the northeast quadrant of the District of Columbia.  Defendant's Motion for Summary Judgment ("Def.'s Mot."), Statement of Material Facts [Dkt. # 62], Exhibit ("Ex.") 7.  On August 1, 2006, parole officer Cromer met with a private investigator employed by L.H.'s family who informed him that L.H. was "mentally challenged and liv[ing] in [an] assisted living [facility]" that did not allow individuals who were not on the resident list to live there.  Def.'s Mot., Declaration of Keith Cromer ("Cromer Decl.") [Dkt. # 62-16] ¶ 12. The investigator further informed Cromer that the plaintiff had met L.H. on June 24, 2006, "on a bus, [] stayed with her several nights," and moved into her residence on July 15, 2006.  *Id.*  Cromer was asked to inform the plaintiff that he should have no more contact with L.H., who, through Community Connections of Washington, D.C., had allegedly informed the plaintiff that she did not want to have a relationship with him and that she wanted him to move out of her residence by July 29,

2

2006. *Id.* ¶¶ 12, 15.  The investigator gave Cromer "a letter dated July 25, 2006, which detailed various allegations against [the plaintiff]."[3]  *Id.* ¶ 12.

On August 1, 2006, Cromer visited L.H.'s home, in part to confirm the investigator's statements.  *Id.* ¶ 14.  The plaintiff "answered the door, showed [Cromer] around the apartment[,] . . . [and] introduced [Cromer] to L.H." as his parole officer.[4]  *Id.* ¶ 15.  Cromer then spoke with L.H. alone.  L.H. confirmed that she asked the plaintiff to leave the house but only because she did not want to lose her home by allowing an unauthorized person to live there.  *Id.*  In response to Cromer's question as to whether the plaintiff "had been in any manner abusive to her or had threatened her[,] L.H. indicated that [the plaintiff] had not been abusive or threatening."  Rather, "[s]he said that [the plaintiff] had been kind to her."  *Id.*  In response to L.H.'s question as to whether the plaintiff was on parole for a murder conviction, Cromer allegedly confirmed that the plaintiff was on parole but told her that she should discuss with the plaintiff why he was on parole.[5]  *Id.*  Allegedly, "L.H. responded that she just wanted [the plaintiff] out of her house and wanted no further contact with him."  *Id.*  That was the only conversation Cromer had with L.H. *Id.* ¶ 17.

---

[3]  The Court will not repeat those allegations because they are impermissible hearsay, disputed by the plaintiff and L.H., and immaterial to resolving the issue at hand.

[4]  The plaintiff disputes that he introduced Cromer to L.H. as his "parole officer . . . because that's not his title."  Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), Declaration of Donnell Hurt [Dkt. # 67-2] ¶ 4.  He also disputes that "Community Connections . . . directed [him] to leave [L.H.'s] apartment" and states that "Mr. Cromer has never encouraged me to advise my girlfriend . . . about the nature of or details of my offense."  *Id.* ¶ 8.

[5]  According to L.H., "Mr. Keith Cromer did tell me about Donnell Hurt being in prison for killing someone."  Pl.'s Opp'n, Exhibit 5, Declaration of [L.H.] [Dkt. # 67-1] ¶ 6.

On August 2, 2006, the plaintiff met with Cromer at his office.  The plaintiff informed

Cromer that he was no longer living with L.H. "because he was asked to leave by L.H.," and that

he was essentially homeless.  *Id.* ¶ 19.  In the instant lawsuit, the plaintiff seeks $10 million in

damages.  *Hurt*, 612 F. Supp. 2d at 55.

## II. DISCUSSION

1. <u>Legal Standard</u>

To grant a motion for summary judgment under Federal Rule of Civil Procedure 56, a

court must find that "there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "might affect

the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S.

242, 248 (1986). When ruling on a motion for summary judgment, "the court must draw all

reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150 (2000) (citations omitted).  Here, the defendant has the burden of demonstrating the

absence of a genuine issue of material fact, and that the plaintiff "fail[ed] to make a showing

sufficient to establish the existence of an element essential to [his] case, and on which [he] will

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the plaintiff "must do more than simply

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Accordingly, the plaintiff must not rely on

"mere allegations or denials . . . but . . .  must set forth specific facts showing that there [are]

genuine issue[s] for trial." *Anderson*, 477 U.S. at 248 (internal quotation marks and citation

omitted) (second omission in original).  Thus, "[i]f the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted."  *Id*. at 249–50 (citations omitted).

    2.  <u>Analysis</u>

    "The Privacy Act regulates the collection, maintenance, use, and dissemination of

information about individuals by federal agencies [and] authorizes civil suits by individuals . . . .

whose Privacy Act rights are infringed."  *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008)

(citations and internal quotation marks omitted).  It prohibits a federal agency from disclosing

"any record . . . contained in a system of records by any means of communication to any person"

without the subject's permission, save exceptions not applicable to this case.  5 U.S.C. § 552a(b).

    Subsection(g)(1)(D) of the Privacy Act authorizes civil remedies against an agency that

"fails to comply with [the disclosure provision]," and subsection (g)(4) provides for monetary

damages of no less than $1,000, costs and attorneys' fees where the agency is shown to have

acted intentionally or willfully.  *See Doe v. FBI*, 936 F.2d 1346, 1350 (D.C. Cir. 1991); *accord*

*Maydak v. U.S.*, 630 F.3d 166, 177-78 (D.C. Cir. 2010).  Thus, an agency may be held liable for

"actual damages sustained by the individual as a result of the refusal or failure" where the agency

has failed to comply with any other provision "in such a way as to have an adverse effect on an

individual."  5 U.S.C. § 552a(g)(1)(D); *Maydak*, 630 F.3d at 178 ("Plaintiffs seeking relief must

establish that (1) the agency violated a provision of the Act, (2) the violation was 'intentional or

willful,' . . . and (3) the violation had an 'adverse effect' on the plaintiff.") (quoting § 552(a)

(g)(4), (g)(1)(D)).  "The plaintiff must allege 'actual damages' connected to the adverse effect to

'qualify' under the Act."  *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 49 (D.D.C. 2009)

(quoting *Doe v. Chao*, 540 U.S. 614, 620-27 (2004)).

Whether Cromer disclosed to L.H. that the plaintiff was on parole for murder is a materially disputed fact that cannot be resolved at the summary judgment stage. *See* Cromer Decl. ¶ 15 (stating that he "confirmed that [the plaintiff] was on parole, but told L.H. that she should discuss with Hurt what he was on parole for."); Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") [Dkt. # 67], Ex. 5, Declaration of [L.H.] [Dkt. # 67-1] ¶ 6 ("Mr. Keith Cromer did tell me about Donnell Hurt being in prison for killing someone.").  However, even if the plaintiff is able to prove that the disclosure was made, the plaintiff's Privacy Act claim nevertheless would fail in regards to the elements of intent and causation.

A.  <u>Intentional or Willful Conduct</u>

The intent element of a Privacy Act damages claim is a high hurdle to clear.  Thus, "a violation of the statute 'must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful.' " *Maydak*, 630 F.3d at 179 (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007)) (other citation omitted).  "'Intentional or willful' means: 'somewhat greater than gross negligence, or, an act committed without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.'" *Id.* (quoting *Waters v. Thornburgh*, 888 F.2d 870, 875 (D.C. Cir. 1989), *abrogated on other grounds by Doe v. Chao*, 540 U.S. 614 (2004)) (alterations omitted).  To survive the defendant's summary judgment motion as to this element of a Privacy Act claim, the plaintiff must "proffer evidence that the Government's actions" rose to the level of the foregoing standard. *Id.* at 180.

Both Cromer and his supervisor, Marie Asike, state that they believed that under CSOSA's policy they could disclose public information, such as the plaintiff's conviction, to a

third party without running afoul of the Privacy Act.  Cromer Decl. ¶ 21; Declaration of Marie

Asike [Dkt. # 62-15] ¶ 5.  The defendant has provided CSOSA's policy, effective October 2,

2000, governing the agency's disclosure obligations under the "Freedom of Information/Privacy

Act."  Def.'s Mot., Exhibit 12 ("Policy").  The Policy lists a parolee's name and "Offense of

Conviction" among information "[t]he U.S. Parole Commission considers . . . to be public."[6]  *Id*.

at 15.

    The plaintiff has not proffered any evidence to contradict Cromer's and Asike's

reasonable reliance on the policy, and it has been made clear that the Privacy Act's "'intentional

or willful' element cannot be satisfied with mere speculation . . . ."  *Maydak*, 630 F.3d at 180.

Furthermore, "[i]f the official's knowledge of the disclosed information derives from sources that

are not protected 'records,' [*e.g.*, public records][,] then the disclosure rarely implicates the

Privacy Act."  *Hurt*, 612 F. Supp. 2d at 58 (quoting *Mulhern v. Gates*, 515 F. Supp. 2d 174, 182

(D.D.C. 2007)).

    Based on the record in this case, the Court determines that no reasonable jury presented

with the defendant's unrefuted evidence could find a violation of the Privacy Act arising from the

alleged disclosure of the plaintiff's conviction, which is a matter of public record.  Therefore, the

defendant is entitled to summary judgment based on the intent element of the plaintiff's claim.

*See Velikonja v. Mueller*, 362 F. Supp. 2d 1, 18 (D.D.C. 2004) ("Summary judgment is proper

where the agency presents evidence explaining its conduct and its grounds for believing its action

to be lawful.") (citing *Laningham v. United States Navy*, 813 F.2d 1236, 1243 (D.C. Cir. 1987)).

----

    [6]  "The United States Parole Commission . . . released the plaintiff to parole . . . under the
supervision of [CSOSA]."  *Hurt*, 612 F. Supp. 2d at 56.

B. Causation

Because summary judgment is warranted on the intent issue, the Court need not address

the causation element.  However, it is clear from the record that the plaintiff cannot show that the

alleged improper disclosure on August 1, 2006, resulted in his homelessness, *see* Pl.'s Opp'n at

7, because it is obvious that the decision for him to leave L.H.'s residence by July 29, 2006, was

made before the alleged disclosure.  *See* Cromer Decl. ¶ 12; Pl.'s Opp'n, Ex. 3 (July 25, 2006

Letter to Cromer from ACHS Investigations, LLC).[6]  Accordingly, the defendant is also entitled

to summary judgment based on the plaintiff's inability to prove this element.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that because the plaintiff cannot establish

all of the elements of his Privacy Act claim, judgment must be awarded to the defendant.[7]

_____s/_____
REGGIE B. WALTON
Date: December 8, 2011                          United States District Judge

---

[6]   The plaintiff also alleges that after the disclosure to L.H., their relationship "was devastated and destroyed," causing him to suffer "mental anguish, psychological pains and suffering . . . ."  Pl.'s Opp'n at 7.  Even if the plaintiff could prove a violation of the Privacy Act, he could not recover monetary damages for the injuries he contends he sustained resulting from the dissolution of his relationship with L.H..  *See Gamble v. Dep't of Army*, 567 F. Supp. 2d 150, 156 (D.D.C. 2008) (citing *Doe v. Chao*, 540 U.S. 614, 620-25 (2004) ("holding that emotional anguish alone is insufficient, and that a plaintiff must show actual damages to recover under the Privacy Act."); *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 49 (D.D.C. 2009) (the "plaintiff 'must establish not only that he was 'adversely affected' by the improper disclosure, but also that he suffered 'some harm for which damages can reasonably be assessed.' ") (citations omitted); *see also Doe v. Chao*, 306 F.3d 170, 180 (4th Cir. 2002) ("An award of compensatory emotional distress damages [under the Privacy Act] requires evidence establish[ing] that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a . . . violation occurred supports an award of compensatory damages.") (footnote, citation and internal quotation marks omitted; second alteration in original).

[7]   A separate Order accompanies this Memorandum Opinion.